D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANATOLY PISMAN, M.D., Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

      -against-

HOWARD A. ZUCKER, M.D., J.D., as
Commissioner of the New York State Department
of Health,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-7210 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Anatoly Pisman brings this putative class action under 42 U.S.C. § 1983 on behalf of all New York Medicaid providers (the "providers") who have received a notice that they have been placed in the New York State Department of Health's ("DOH") Accelerated Collection Campaign (the "ACC"). (Compl. (Dkt. 1) ¶ 2.) Plaintiff alleges that, through the ACC, Defendant Howard A. Zucker, Commissioner of DOH, has violated Plaintiff's right under the Fifth and Fourteenth Amendments to procedural due process and has deprived Plaintiff of his private property without just compensation in violation of the Fifth Amendment. (Id. ¶¶ 42, 46.)

Before the court is Defendant's motion to dismiss the complaint. (Mot. to Dismiss ("Mot.") (Dkt. 29).) For the following reasons, the motion is GRANTED.

I.  **BACKGROUND**

    A.  **Facts**

This case concerns Medicaid expenditures in the state of New York and the method used by DOH for collecting outstanding liabilities from Medicaid providers.

According to Plaintiff, faced with the possibility that state Medicaid spending could exceed the maximum permissible amount of annual Medicaid expenditures (referred to as the

1

"Medicaid Global Spending Cap"), the DOH has undertaken a number of "plan[s] of action[]" pursuant to which the state intends to "bring spending in line with the cap." (Compl. ¶ 26.) One such plan is the ACC. (Id. ¶ 27.) Through the ACC, DOH "collect[s] and keep[s] unverifiable purported overpayments from Medicaid providers where [DOH] either lacks records from which the existence of a liability may be determined, or has not provided such records" to the providers. (Id. ¶ 1.)

The ACC works as follows. First, DOH sends a letter to Medicaid providers seeking payment by a date certain of outstanding Medicaid liabilities (the "Notice"). (Id. ¶ 28.) "The Notice informs providers of an overpayment balance that cannot be resolved by March 31, 2018[,] through recoupment against the provider's current Medicaid claims." (Id. ¶ 29.) The Notice offers providers three ways of resolving the outstanding balance: they may submit a payment directly to DOH; they may submit a repayment proposal detailing how the provider intends to pay the liability in full in advance of the deadline; or they may advise DOH if there is another provider to which DOH should transfer the outstanding liabilities. (Id. ¶ 30.) The Notice further informs providers that, if they do not respond or make acceptable payment arrangements within 15 days of the date of the letter, DOH will enlist state agencies "to ensure that the provider's debt is retired in a timely manner." (Id. ¶ 31.) According to Plaintiff, the Notice "neither provides any details concerning the purported liability nor gives providers the opportunity to be heard." (Id.)

Plaintiff, a physician enrolled as a provider in DOH's Medicaid system, received a Notice on August 4, 2017 (the "Letter"). (Id. ¶¶ 32-33; see Letter (Dkt. 34-1).) This was the first time that Plaintiff had been informed by DOH "regarding an overpayment determination with respect to any of his submitted claims and remittances." (Compl. ¶ 33.) On August 8, 2017, Plaintiff

2

sent an email to DOH requesting more information about and supporting documentation for the outstanding balances. (Id. ¶ 34; see Aug. 8, 2017, Email (Dkt. 34-2).) The following day, a DOH agent responded to Plaintiff's email. (Compl. ¶ 35.) The agent provided Plaintiff with a screenshot of alleged overpayment liabilities dating back to 2010 connected to Plaintiff's Medicaid provider ID number. (Id.) The agent told Plaintiff that DOH did not, however, have access to Plaintiff's Medicaid claims, and that for copies of previous remittance advices for all Medicaid claims submitted and paid by New York State he would have to contact a contractor, CSC Providers Services ("CSC"). (Id.) Plaintiff and his representatives continued to correspond with DOH in August and September 2017. (Id. ¶ 36.) During this time Plaintiff also submitted multiple requests for information to CSC, which told Plaintiff that it could not provide him with the requested remittances because the remittances were more than five years old. (Id. ¶ 37.)

On September 5, 2017, DOH provided Plaintiff with two pages of a remittance addressed to Plaintiff and dated February 26, 2014, that listed the liabilities as they existed at that time. (Id. ¶ 39.) Plaintiff alleges that he had not previously received the remittance and that DOH could not confirm that it was ever sent to him or anybody else. (Id.) DOH referred Plaintiff to a second contractor, CSRA, for more information concerning the remittances. (Id.) On November 2, 2017, Plaintiff contacted CSRA, which confirmed that the remittances had never been sent to Plaintiff because he was not the "pay-to" on the statements. (Id.) CSRA did not tell Plaintiff to whom the remittances has been provided, purportedly due to restrictions imposed by the Health Insurance Portability and Accountability Act ("HIPAA"). (Id.)

On February 6, 2018, DOH provided Plaintiff with copies of remittances establishing a deficiency of $16,861.06. (Decl. of Donna M. Cater ("Cater Decl.") (Dkt. 29-2) ¶ 10.)

### B. Procedural History

Plaintiff filed the complaint on December 11, 2017. (Compl.) Plaintiff seeks a judgment declaring the ACC "null and void," an injunction preventing Defendant from implementing the ACC or retaining any funds collected pursuant to the ACC, the production of supporting documentation to substantiate the information in the Letter, and other relief that the court may deem just and proper, including litigation costs and attorney's fees. (Id. at p.10.)

At a pre-motion conference on March 15, 2018, the court granted Defendant leave to move to dismiss the complaint. (Mar. 15, 2018, Min. Entry.) The motion was fully briefed on July 20, 2018. (See Mot.; Mem. in Supp. of Mot. ("Mem.") (Dkt. 29-1); Pl. Opp'n to Mot. ("Pl. Opp'n") (Dkt. 30); Def. Reply (Dkt. 31).)

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Khanom v. Kerry, 37 F. Supp. 3d 567, 572 (E.D.N.Y. 2014) (alteration adopted) (internal quotation marks omitted) (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113; see Khanom, 37 F. Supp. 3d at 572.

Meanwhile, the purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508

F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendant argues that the court lacks jurisdiction over Plaintiff's due process claim because the claim is moot, and that the court lacks jurisdiction over the takings claim because the claim is unripe. (Mem. at 1-2.) Because the court must assure itself of subject matter jurisdiction before assessing the merits of a claim, the court must address these arguments before turning to the Rule 12(b)(6) motion. See Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) ("When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the [c]ourt must consider the Rule

12(b)(1) motion first." (citing, inter alia, Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990))).

The court holds that it has jurisdiction to adjudicate both claims but that jurisdiction over Plaintiff's takings claim should be declined pursuant to the prudential ripeness doctrine set forth in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

1. Mootness (Due Process Claim)

   a. *Legal Framework*

Under Article III of the United States Constitution, "the subject matter jurisdiction of the federal courts" is limited such that "the 'parties must continue to have a personal stake in the outcome in the lawsuit'" in order for the court's adjudication of the case to be proper. United States v. Wiltshire, 772 F.3d 976, 978 (2d Cir. 2014) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990)). When an "intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be dismissed as moot." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (internal citation and quotation marks omitted). A plaintiff has lost a sufficient personal stake in the litigation "only when it is impossible for a court to grant [him] any effectual relief." Id. (quoting Knox v. SEIU, 567 U.S. 298, 307 (2012)). Accordingly, as long as a plaintiff retains "a concrete interest, however small, in the outcome of the litigation, the case is not moot." Id. (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)); see, e.g., Ellis v. Bhd. of Ry. Clerks, 466 U.S. 435, 442 (1984) (finding the plaintiff's request for an injunction against paying union dues was not mooted by the defendant union's dissolution because the "undeniably minute" amount of interest on previously paid dues remained at issue); Fishman v. Daines, 743

6

F. Supp. 2d 127, 139-40 (E.D.N.Y. 2010) (holding that the restoration of Medicaid benefits to the plaintiff did not deprive the court of jurisdiction when the court could still grant injunctive relief requiring the defendant to provide the plaintiff with a hearing to adjudicate past unpaid benefits).

Moreover, "factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." See Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 110 (2d Cir. 2010) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000)). A defendant's "voluntary cessation of allegedly illegal activity may render a case moot," however, when "the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. (quoting Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996), abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)). A party asserting mootness bears a "heavy" burden of proof. N.Y. State Nat'l Org. for Women v. Terry, 159 F.3d 86, 91 (2d Cir. 1998) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

  b. *Application*

After the filing of the complaint in this case, Defendant sent Plaintiff copies of remittance advices "detailing the deficiency owed" by Plaintiff, as referred to in the Letter. (Mem. at 20.) The remittance advices document each instance where Plaintiff was overpaid, provide a brief reason for the overpayment, and calculate the "negative balances" on Plaintiff's account from these overpayments. (See Cater Decl. ¶ 8 n.2.) Defendant argues that the production of these remittance advices "fully establish[es] [Plaintiff's] liability" and therefore moots Plaintiff's claim

7

that DOH denied him due process by demanding payment pursuant to the ACC without providing him notice or information regarding the amounts owed. (Mem. at 20; see Cater Decl. ¶ 10.) Plaintiff responds that his due process claim is not moot because the remittance advices "do not allow Plaintiff to determine the basis of [DOH's] overpayment claims" nor do they "provide sufficient information for Plaintiff . . . to evaluate [DOH's] claims." (Pl. Opp'n at 19.) Furthermore, aside from the question of whether the records provided by DOH are adequate, Plaintiff claims that the court can still grant him his sought injunction against the continued operation of the ACC in spite of DOH's voluntary cessation of its allegedly unconstitutional behavior. (See id. at 19-20; see also id. at 20-21 (arguing that DOH has not met "its burden of demonstrating that the challenged conduct will cease").)

Plaintiff's due process claim turns on his allegations that (1) DOH failed to provide Plaintiff with prior notice of his debt liability before attempting to collect the alleged overpayments, (2) DOH failed to inform Plaintiff of his rights under New York law to challenge DOH's determination of liability, and (3) DOH and its contractor, CSRA, refused to provide Plaintiff with remittance advices and other documentation that would demonstrate the existence of Plaintiff's liability. (Compl. ¶ 42; see Pl. Opp'n at 10, 16-17.) The court agrees with Plaintiff that this claim is not mooted by the production of the remittance advices.

First, the fact that the DOH has now provided these remittance advices to Plaintiff does not address the question of why DOH failed to give these records to Plaintiff in the first place. (See Pl. Opp'n at 4-5.) Previously, Plaintiff had been denied access to these records because he was not listed as the "pay-to" on the remittances. (Compl. ¶ 39.) When asked to whom the records had been sent, CSRA refused to tell him, "purportedly due to HIPAA restrictions." (Id.)

Any due process harm arising out of these circumstances is not mooted by Plaintiff's subsequent receipt of his remittances.

Additionally, contrary to Defendant's argument, Plaintiff's interest extends beyond simply demanding that DOH provide proof of Plaintiff's indebtedness. (See Mem. at 21.) Rather, Plaintiff is challenging the adequacy of DOH's procedures for establishing the existence of Plaintiff's indebtedness and collecting the debt from Plaintiff. (See Compl. ¶¶ 1, 40.) Part of this challenge involves the ability for Plaintiff—and other similarly situated providers—to evaluate DOH's claims of indebtedness. Plaintiff argues that, because the recently provided remittance advices "predate the time for which providers are required to retain Medicaid records," it might be impossible for him to cross-check his own records with those provided by DOH if he had, as permitted by law, disposed of the records for those older billing periods. (See Pl. Opp'n at 11, 19.) Thus, even if the remittance advices support Defendant's determination of Plaintiff's liability, Defendant's failure to provide timely notice of Plaintiff's liability hindered Plaintiff's ability to protect his interests by preserving records that dispute Defendant's determination. See Ortiz v. Regan, 749 F. Supp. 1254, 1263 (S.D.N.Y. 1990) ("Where state action may effect a final deprivation of property, due process requires sufficient notice to enable affected persons to protect their interests."). Defendant's production of Plaintiff's remittance advices cannot eradicate this effect of Defendant's alleged failure to provide Plaintiff with timely notice of his debt liability.

Regardless of whether the remittance advices ultimately support DOH's determination of liability, Plaintiff has an interest in challenging a program that allegedly deprived him of his procedural rights in the process of reaching this determination. See Norton v. Town of Islip, 239 F. Supp. 2d 264, 271-72 (E.D.N.Y. 2003) (noting that a plaintiff suffers harm from a procedural

9

due process violation even when the defendant "could later prove that the factual determinations it made were correct" because the Due Process Clause "creates an independent right to notice and a hearing . . . without respect to the underlying merits of the case"). The court therefore finds that Plaintiff's procedural due process claim is not moot and that subject matter jurisdiction exists over it.

2. Ripeness (Takings Claim)

   a. *Legal Overview*

Defendant also argues that the court lacks jurisdiction over Plaintiff's takings claim because the claim is unripe. (Mem. at 18.) When considering whether a constitutional takings claim is ripe, courts apply a test derived from the Supreme Court's holding in Williamson County. Under Williamson County, the plaintiff must show that "(1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." Progressive Credit Union v. City of New York, 889 F.3d 40, 54 (2d Cir. 2018). Both prongs must be satisfied for a takings claim to be ripe. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733-34 (1997) (noting that Williamson County presents "two independent prudential hurdles"). While Williamson County usually applies in the context of a land-use dispute, courts—including the Supreme Court—often apply traditional takings analysis in the context of non-traditional takings claims, such as when the property at issue is money. See Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 515 (2d Cir. 2014) ("Williamson County applies to all takings claims."); cf. Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 643-44 (1993) (using real-property takings cases to analyze claim of monetary taking).

The first prong of the Williamson County analysis requires the court to ask whether the initial administrative decisionmaker has rendered a final decision on the matter at issue. The finality requirement "helps distinguish between those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent injury,' and those in which injury is 'merely speculative and may never occur, depending on the final administrative resolution.'" Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014) (first quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992), and then quoting Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002)); see Williamson County, 473 U.S. at 193 ("[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . ."). By requiring the plaintiff to show prior to bringing suit that an administrative decisionmaker rendered a final decision regarding the property at issue, the court is able to "develop[] a full factual record of the dispute, avoid[] unnecessary constitutional rulings, and honor[] principles of federalism." Dean v. Town of Hempstead, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016).

In order to satisfy the second Williamson County prong, the plaintiff must allege that he "exhausted state procedures for obtaining just compensation."[1] Guichard v. Town of Brookhaven, 26 F. Supp. 3d 219, 225 (E.D.N.Y. 2014). Where "a State provides an adequate procedure for seeking just compensation, the property owner cannot [state a takings claim] until [he] has used the procedure and been denied just compensation." Williamson County, 473 U.S. at 195. While similar to the finality prong, the exhaustion prong is less concerned with clarifying

---

[1] The Supreme Court has granted certiorari on the question of whether the Court should reconsider Williamson County's exhaustion prong. See Knick v. Township of Scott, 138 S. Ct. 1262 (Mem) (2018); see also Pet'n for Writ of Certiorari, at i, Knick, 138 S. Ct. 1262 (No. 17-647). Because the court finds that Plaintiff has failed to satisfy both elements of Williamson County's ripeness test, the forthcoming decision in Knick will not affect the outcome in this case.

11

whether an agency has made a final decision to take a plaintiff's property and instead considers whether the state offers a "reasonable, certain, and adequate provision for obtaining compensation" after the taking has occurred. Kurtz, 758 F.3d at 512 (quoting Williamson County, 473 U.S. at 194).

  b.  *Application*

Plaintiff's takings claim fails both prongs of the Williamson County ripeness analysis. First, Plaintiff cannot meet the finality requirement. The Letter threatened enforcement action but, as far as the court is aware, DOH has not commenced any proceedings against Plaintiff or actually taken his property. In order for DOH to secure Plaintiff's alleged debt, it would have to take the additional step of initiating a civil proceeding to collect. See N.Y. Comp. Codes R & Regs. tit. 18, § 518.5(c) ("The department reserves the right to initiate or participate in civil proceedings . . . to recover any overpayment."). Until this has occurred, the court is unable to conclude that Plaintiff has been injured in accordance with the finality requirement. Cf. Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 351 (2d Cir. 2005) (finding plaintiff could not show injury because any taking would occur "only after a legal proceeding is filed"). The court also notes that the Letter informed Plaintiff that DOH cannot collect the debt by withholding from Plaintiff's future Medicaid reimbursements, a disclaimer that diminished the risk of any immediate harm resulting from Defendant's initial determination of liability. (See Letter.)

The court also finds that Plaintiff fails to satisfy the exhaustion prong. As Defendant points out, the Second Circuit has found that a proceeding under Article 78 of the New York Civil Practice Law and Rules constitutes an adequate remedy under state law. (See Mem. at 10 n.5.) See Vandor, Inc. v. Militello, 301 F.3d 37, 38-39 (2d Cir. 2002). Contrary to Plaintiff's argument (see Pl. Opp'n at 13-16), an Article 78 proceeding would allow a state court to

undertake a broad review of Defendant's collection procedures. See N.Y. C.P.L.R. 7803 (permitting a party to initiate a judicial proceeding to determine whether an agency "failed to perform a duty enjoined upon it by law," was "affected by an error of law," or made a "determination [in] violation of lawful procedure"). In fact, state courts in New York have adjudicated Article 78 claims similar to Plaintiff's in the context of disputes over Medicaid reimbursements. See, e.g., Cortlandt Nursing Home v. Axelrod, 486 N.E.2d 785, 790-91 (N.Y. 1985) (reviewing an Article 78 proceeding brought by a provider for declaratory and injunctive relief to prohibit DOH from recouping or attempting to recoup overpayments). In addition, courts have found that an action under Article I, Section 7 of the New York State Constitution—which provides that "[p]rivate property shall not be taken for public use without just compensation"—serves as an adequate state remedy for takings claims. See Progressive Credit Union, 889 F.3d at 55; Viteritti v. Incorporated Village of Bayville, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011). Plaintiff does not allege that he pursued any of these remedies prior to bringing this action and he does not offer any justification for his failure to exhaust them.

Because Plaintiff's complaint does not adequately allege that his takings claim is ripe for adjudication in federal court, the court dismisses this claim. See Viteritti, 831 F. Supp. 2d at 591-92 (citing Rahl v. N.Y. Tel. Co., No. 09-CV-1165, 2010 WL 3338832, at *5 (N.D.N.Y. Aug. 24, 2010)).

B.  **The Merits of Plaintiff's Procedural Due Process Claim**

Under the Due Process Clause, "no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard." Palkovic v. Johnson, 281 F. App'x 63, 66 (2d Cir. 2008) (summary order) (quoting Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007)); see Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 307, 314 (1950). Accordingly,

in order to state a § 1983 procedural due process claim, a plaintiff must first show that he was deprived of a life, liberty, or property interest; without such a deprivation, "no process is due." Kerry v. Din, 135 S. Ct. 2128, 2132 (2015) (plurality opinion) (emphasis omitted); see Sundbye v. Ogunleye, 3 F. Supp. 2d 254, 262 (E.D.N.Y. 1998) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972)). Only after the plaintiff has identified a protected interest of which the state has deprived him may the court proceed to ask whether the deprivation was effected without due process. See Progressive Credit Union, 889 F.3d at 51.

Plaintiff claims that, through the ACC, DOH has violated Plaintiff's right to due process by demanding that he remit money to the state without providing adequate notice of how the liability was determined or how to challenge it. (See Compl. ¶ 42; Pl. Opp'n at 7-8, 10.) He argues that he suffered a "deprivation" of his property interest in the money he was paid through Medicaid reimbursements when DOH "threat[ened to] depriv[e] him "of money earned for services performed as a qualified Medicaid provider." (Pl. Opp'n at 9 (emphasis omitted).) The court disagrees.[2]

At most, the Letter served as a threat of initiating a subsequent collection action that would deprive Plaintiff of money that he had already received. While threats of subsequent legal action can, as discussed above, help establish jurisdiction, they are not sufficient to meet the deprivation requirement of a procedural due process claim. Plaintiff's reliance on Senape v. Constantino, No. 93-CV-5182 (SS), 1995 WL 29502 (S.D.N.Y. Jan. 26, 1995), aff'd, 99 F.3d 401 (2d Cir. 1995), to argue the opposite is inapt. (See Pl. Opp'n at 9.) In Senape, the New

---

[2] If the court construed Plaintiff's complaint as alleging that he suffered a violation of his procedural due process rights simply through the receipt of insufficient notice regarding the collection of overpayments (see Compl. ¶ 42; Pl. Opp'n at 10), his failure to allege a deprivation would still doom his claim. As the Supreme Court has made clear, "notice and an opportunity to be heard are the vehicles which must be used to protect pre-existing rights: they are not rights in and of themselves." Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)).

York State Department of Social Services, through official action, announced its intention to exclude the plaintiff from its list of qualified Medicaid providers and to collect $335,205 in overpayment from him. 1995 WL 29502, at *2. Even though the state had not yet collected the overpayment from the plaintiff, then-Judge Sotomayor found that the plaintiff had alleged the deprivation of a property right. Id. at *4. The crucial difference between that case and this one is that, in Senape, the state maintained the right to collect the overpayments without any further process, while DOH here has stated that any collection of debt from Plaintiff will require "additional action." (See Letter; see also Def. Reply at 4 & n.2 (comparing Senape and the instant case).)

Even if Plaintiff were correct that Senape stands for the principle that the mere proposal of a deprivation constitutes a deprivation, the court would decline to follow that rule because it is against the weight of more recent circuit precedent. In O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005), a public school teacher claimed that the state of Connecticut deprived him of due process when it placed him on sick leave and conditioned his return on a psychiatric examination and his release of past medical records. The Second Circuit, rejecting the plaintiff's claim as it related to the time in which he was on paid sick leave, found that he could not been said to have been "deprived of a property right in any meaningful sense until his sick pay ran out." Id. at 200. This decision has been interpreted to stand for the proposition that "unconstitutional conduct absent any adverse consequence does not give rise to a . . . due process claim." Joglo Realties, Inc. v. Seggos, No. 16-CV-1666 (ARR), 2016 WL 4491409, at *6 (E.D.N.Y. Aug. 24, 2016); see also id. at *7 ("For all of the reasons stated above in the context of plaintiffs' substantive due process claim, plaintiffs have not alleged that they [] were deprived of their property rights without due process of law.").

Because Plaintiff cannot show that he has been deprived of any property interest, the court need not decide whether the ACC provides sufficient procedural due process. The court therefore dismisses Plaintiff's procedural due process claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 29) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of Court is respectfully DIRECTED to enter judgment for Defendant and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 9, 2019

NICHOLAS G. GARAUFIS
United States District Judge